

**Entered on Docket**
**July 03, 2013**

Honorable Bruce A. Markell
United States Bankruptcy Judge

___

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: | BK-S-12-23691-BAM |
| | Chapter 7 |
| KEVIN WAYNE HENDERSON and ROSA ISELA HENDERSON, | Date: April 23, 2013 |
| | Time: 8:30 a.m. |
| Debtors. | |
| In re: | BK-S-12-23954-BAM |
| | Chapter 7 |
| DOUGLAS ALLEN KENNEDY and JENNIFER JOY KENNEDY, | Date: April 23, 2013 |
| | Time: 8:30 a.m. |
| Debtors. | |
| In re: | BK-S-12-24017-BAM |
| | Chapter 7 |
| JANICE P. GREEN, a/k/a JAN GREEN, | Date: April 23, 2013 |
| | Time: 8:30 a.m. |
| Debtor. | |
| In re: | BK-S-13-10960-BAM |
| | Chapter 7 |
| BEATRIZ A. PEREZ-URREA, a/k/a BEATRIZ PEREZ, | Date: April 23, 2013 |
| | Time: 8:30 a.m. |
| Debtor. | |
| In re: | BK-S-13-11417-BAM |
| | Chapter 7 |
| EDGAR A. GREENE, | Date: April 30, 2013 |
| | Time: 8:30 a.m. |
| Debtor. | |

**OPINION DISAPPROVING REAFFIRMATION AGREEMENTS**

## I. INTRODUCTION

These cases each present a common factual scenario: debtors who wish to reaffirm a car loan that exceeds the value of the car that serves as collateral. The debtors each wish to reaffirm the loan because a car is, among other things, essential to keeping their employment. Even though all debtors are current on their payments, they fear repossession because their purchase contracts make a bankruptcy filing an event of default that allows repossession.

Controlling Nevada law, however, has recently changed to preclude repossession unless the default significantly impairs the prospect of payment, performance, or realization of the lender's collateral. The question thus resolves itself into whether the simple act of filing bankruptcy, without more, constitutes such an impairment. This court says no.

Without such an impairment, a lender cannot repossess simply because of a bankruptcy filing. This is critical, because one of the two requirements for approval of a reaffirmation agreement is that the reaffirmation agreement be in the debtor's best interests. If it is not – and without the specter of legal repossession it cannot be – then the agreement cannot be approved. Accordingly, in each of theses cases the court will deny approval of the reaffirmation agreement.

## II. FACTS

### A. *In re Henderson*

The Hendersons purchased their 2012 Chevy Suburban on June 6, 2012. (12-23691, Dkt. No. 1 at 22.) On December 17, 2012, they filed their Chapter 7 bankruptcy petition. (*Id.* at 1.) They scheduled a secured claim in favor of U.S. Bank for $57,724, listed the vehicle as collateral, and asserted the vehicle's value at $57,164. Their schedules thus showed an unsecured deficiency of $560. (*Id.* at 22.)

Their proposed reaffirmation agreement—filed about three months after their petition—stated the following: (i) total amount to be paid: $53,905; (ii) monthly payment: $816;

(iii) debtors' net monthly income: $3,129; and (iv) the car's market value: $54,725.[1] (12-23691, Dkt. No. 25.)

### B. *In re Kennedy*

The Kennedys purchased their 2012 Buick Enclave on July 6, 2012. (12-23954, Dkt. No. 1 at 21.) On December 26, 2012, they filed their Chapter 7 bankruptcy petition. (*Id.* at 1.) They scheduled a secured claim in favor of Wells Fargo Dealer Services for $27,636, listed the Enclave as collateral, and asserted the vehicle's value at $26,990. Their schedules thus showed an unsecured deficiency of $646. (*Id.* at 21.)

Their proposed reaffirmation agreement—filed about three months after their petition—stated the following: (i) total amount to be paid: $26,596; (ii) monthly payment: $440; (iii) debtors' net monthly income: $100; and (iv) the car's market value: $36,800.[2] (12-23954, Dkt. No. 16.)

### C. *In re Green*

Janice Green purchased her 2011 Ford Escape on November 1, 2011. (12-24017, Dkt. No. 1 at 17.) On December 27, 2012, she filed her Chapter 7 bankruptcy petition. (*Id.* at 1.) She scheduled a secured claim in favor of GM Financial for $24,503, listed the Escape as collateral for that loan, and scheduled the vehicle's value at $23,000. Her schedules thus showed an unsecured deficiency of $1,503. (*Id.* at 17.)

Her proposed reaffirmation agreement—filed about four months after her petition—stated each of the following: (i) total amount to be paid: $23,409; (ii) monthly payment: $530; (iii) her net monthly income: $156; and (iv) the car's market value: $22,525.[3] (12-24017, Dkt. No. 17.)

---

[1] The vehicle's asserted value in the reaffirmation agreement is $2,439 *less* than in the schedules.

[2] The vehicle's asserted value in the reaffirmation agreement is $9,810 *more* than in the schedules.

[3] The vehicle's asserted value in the reaffirmation agreement is $475 *less* than in the schedules.

3

### D. *In re Perez-Urrea*

Beatriz Perez-Urrea purchased her 2009 Nissan Altima in May 2012. (13-10960, Dkt. No. 1 at 17.) On February 8, 2013, she filed her Chapter 7 bankruptcy petition. (*Id.* at 1.) She scheduled a secured claim in favor of Capital One Auto Financing for $17,500, listed the Altima as collateral, and asserted the vehicle's value to be $6,500. Her schedules thus showed an unsecured deficiency of $11,000. (*Id.* at 17.)

Her proposed reaffirmation agreement—filed about one month after her petition—stated the following: (i) total amount to be paid: $17,498; (ii) monthly payment: $410; (iii) her net monthly income: *negative* $40; and (iv) the car's market value: $14,675.[4] (13-10960, Dkt. No. 16.)

### E. *In re Greene*

Edgar Greene purchased his 2012 Ford Fusion on October 20, 2011. (Reaffirmation Hr'g, April 30, 2013; *see* 13-11417, Dkt. No. 1 at 18.) On February 25, 2013, he filed his Chapter 7 bankruptcy petition. (13-11417, Dkt. No. 1.) He scheduled a secured claim in favor of Ford Motor Credit for $18,218, listed the Fusion as collateral for the loan, and asserted the vehicle's value to be $18,741, thus indicating no unsecured deficiency.[5] (*Id.* at 18.)

His proposed reaffirmation agreement—filed about one month after his petition—stated the following: (i) total amount to be paid: $17,813; (ii) monthly payment: $405; (iii) his net monthly income: $57; and (iv) the car's market value: $18,075.[6] (13-11417, Dkt. No. 19.)

## III. ANALYSIS

### A. The Applicable Law

A reaffirmation agreement is an agreement "the consideration for which, in whole or in

---

[4] The vehicle's asserted value in the reaffirmation agreement is $8,175 *more* than in the schedules.

[5] This seems dubious. The high Blue Book value for such vehicles was around $17,000.

[6] The vehicle's asserted value in the reaffirmation agreement is $666 *less* than in the schedules.

4

part, is based on a debt that is dischargeable . . . ." 11 U.S.C. § 524(c)(1) (2012). Reaffirmation agreements are enforceable only if approved in accordance with Section 524(c)(1)–(6). The process for this approval starts with Section 521(a)(2) of the Bankruptcy Code. That section requires debtors to file a statement of intention with respect to property of the estate that secures their debts, such as an automobile serving as collateral for an auto loan. *Id.* § 521(a)(2)(A). The statement must indicate whether the debtor intends to surrender or retain the property. *Id.* The debtor must then timely perform her intention with respect to the property. *Id.* § 521(a)(2)(B). If the intention is to retain the property, the debtor must either redeem it (by paying the amount of the secured claim in full) or reaffirm the debt secured by it (by entering into such an agreement with the creditor). *Id.* §§ 521(a)(2)(A), 722. Section 521(a)(2) does not "alter the debtor's or trustee's rights with regard to such property . . . , except as provided in section 362(h)." *Id.*

Section 362(h), in turn, provides that the automatic stay under Section 362(a) "is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim . . . , and such personal property shall no longer be property of the estate if the debtor fails" to file a statement of intention or to perform that intention within the time limits set by Section 521(a)(2). *Id.* § 362(h)(1). *See Samson v. Western Capital Partners, LLC (In re Blixseth)*, 684 F.3d 865 (9th Cir. 2012).

If the debtor intends to reaffirm the debt, she must "enter into an agreement of the kind specified in section 524(c)." *Id.* Notably, the debtor is required to "enter into" the agreement to comply with Section 362(h); the statute is silent on whether the court must ultimately approve the agreement. *In re Moustafi*, 371 B.R. 434, 439 (Bankr. D. Ariz. 2007).

For reaffirmation agreements, Section 524(c) lists various content and timing requirements, none of which are in dispute in any of these cases. *See* 11 U.S.C. § 524(c)(1)–(5) (2012). Paragraph (6) is relevant, however, as it provides the requirements for court approval of reaffirmation agreements for personal property negotiated without the assistance of counsel, *id.* § 524(c)(6), such as is the case with every debtor here. To approve such agreements, the court

5

must find that the reaffirmation agreement does "not impos[e] an undue hardship on the debtor or a dependent of the debtor" *and* that the agreement is "in the best interest of the debtor." *Id.* § 524(c)(6)(A).[7]

There is a presumption of undue hardship "if the debtor's monthly income less the debtor's monthly expenses . . . is less than the scheduled payments on the reaffirmed debt." *Id.* § 524(m)(1). The debtor may rebut the presumption by identifying additional sources of funds to make the payments. *Id.*

With respect to the second requirement that the agreement must be "in the best interest of the debtor," the Code does not specify how to determine the debtor's best interest; it is a fact-specific analysis. *See In re Kamps*, 217 B.R. 836, 847 (Bankr. C.D. Cal. 1998). However, "the financial best interest of the debtor ordinarily requires the denial of a reaffirmation of an unsecured debt." *In re Carlos*, 215 B.R. 52, 62 (Bankr. C.D. Cal. 1997).

To summarize, the court must disapprove a reaffirmation agreement if it imposes an undue hardship on the debtor *or* if it is not in the debtor's best interest. Even if the court does not approve the reaffirmation agreement, however, the vehicle remains in the estate and is protected by the automatic stay so long as the reaffirmation agreement complies with Section 524(c). 11 U.S.C. § 362(h) (2012). But the stay ultimately ends, as the entry of the discharge terminates the automatic stay, 11 U.S.C. § 362(c), and replaces it with the permanent discharge injunction – which notably does not restrict secured creditors from enforcing their liens. 11 U.S.C. § 524(a). Accordingly, debtors may be rightfully concerned that their vehicles will be repossessed post-discharge because most car purchase agreements, printed on standard forms, state a default occurs if the debtor files for bankruptcy relief, or if the debtor was ever a debtor in bankruptcy. These so-

---

[7]The strict requirements for reaffirmation in the Code and Bankruptcy Rules "'grew out of a long history of coercive and deceptive actions by creditors to secure reaffirmation of discharged debt.'" *In re Grisham*, 436 B.R. 896, 900 (Bankr. N.D. Tex. 2010) (quoting 4 COLLIER ON BANKRUPTCY ¶ 524.04 (16th ed. 2009)).

6

called "*ipso facto*" clauses[8] are nearly universal in vehicle purchase contracts.

      A creditor's right to repossession is controlled by nonbankruptcy law. "[T]he disposition of the debtor's assets is generally left to state law . . . The parties contract, in conjunction with state law, determines when a debtor has defaulted on an automobile loan." *Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1114–15 (9th Cir. 2009), *aff'g*, 383 B.R. 481, 488–89 (B.A.P. 9th Cir. 2008). This is normally controlled by a state's adoption of Article 9 of the Uniform Commercial Code, which does not specify what actions or conditions are defaults. Rather, it allows debtors and creditors to define conditions leading to default in their security agreement. U.C.C. § 9-601, cmt. 3 ("[T]his Article leaves to the agreement of the parties the circumstances givening rise to a default.") As default is necessary to a lender's right to repossess, U.C.C. § 9-601(a), the conditions defining default are critical.

      Nevada law, however, has recently changed the background laws. For vehicle sale contracts, Nevada's retail installment law now states:

> Notwithstanding the provisions of any contract to the contrary, default on the part of the buyer is only enforceable to the extent that: [1] The buyer fails to make a payment as required by the agreement; or [2] The prospect of payment, performance or realization of collateral is *significantly impaired*. The burden of establishing the prospect of significant impairment is on the seller.

NEV. REV. STAT. § 97.304 (2011) (emphasis added). This statute became effective on October 1, 2011 and applies only to purchases made after that date.

      This statute renders provisions such as *ipso facto* clauses unenforceable unless the fact of the bankruptcy itself amounts to a significant impairment of the prospect of payment, performance, or realization of collateral. The question here is whether the filing of a bankruptcy meets this test.

      While the Bankruptcy Code does not limit or prevent the operation of *ipso facto* provisions that place the debtor in default for filing for bankruptcy, 11 U.S.C. § 521(d) (2012), the Code's

---

[8]"*Ipso facto*" is Latin for "by the fact itself," so *ipso facto* clauses turn the simple filing of a bankruptcy – the simple "fact itself" of filing a bankruptcy – into a default.

7

non-rejection of such provisions does not override state laws that regulate them. *In re Dumont*, 383 B.R. at 488–89 ("Where otherwise enforceable, ipso facto default provisions may now be used by creditors to repossess, . . . [but s]ome state consumer protection statutes prevent a creditor from repossessing when there is no payment default. These . . . statutes have the potential to make [Section 521(d)] meaningless if repossession is barred by state law when a debtor's payments are current.").

The court thus asks whether NEV. REV. STAT. § 97.304 has such potential, and to do so must look to the statute's origins. Those are in the Uniform Consumer Credit Code ("UCCC"). Although Nevada has not adopted the UCCC in its entirety, NEV. REV. STAT. § 97.304 was adapted from § 5.109 of the UCCC, which reads:

> An agreement of the parties to a consumer credit transaction with respect to default on the part of the consumer is enforceable only to the extent that: (1) the consumer fails to make a payment as required by agreement; or (2) the prospect of payment, performance or realization of collateral is *significantly impaired*; the burden of establishing the prospect of significant impairment is on the seller.

UNIFORM CONSUMER CREDIT CODE § 5.109 (1974) (emphasis added). The UCCC was completed in 1968 and amended in 1974. *Consumer Credit Code Summary*, UNIFORM LAW COMM'N, http://www.uniformlaws.org/ActSummary.aspx?title=Consumer%20Credit%20Code (last visited May 22, 2013). It was designed to be a "balanced consumer protection law, providing comprehensive regulation of consumer credit." *Id.* As to UCCC § 5.109, "[c]onfining default to these scenarios is designed to prevent abuse of the consumer by the creditor." *Johnson Cnty. Auto Credit, Inc. v. Green*, 83 P.3d 152, 158, 277 Kan. 148, 155 (2004). At least ten states have adopted some version of UCCC § 5.109.[9]

Understanding NEV. REV. STAT. § 97.304 requires understanding what constitutes a

---

[9] *See* IDAHO CODE ANN. § 28-45-107 (2012); KAN. STAT. ANN. § 16a-5-109 (2012); ME. REV. STAT. tit. 9-A, § 5-109 (2012); MASS. GEN. LAWS ch. 255B, § 20B(a) (2012); MO. REV. STAT. § 408.552 (2012); NEB. REV. STAT. § 45-1, 105(5) (2012); N.C. GEN. STAT. § 53-180(c) (2012); R.I. GEN. LAWS § 6-51-3 (2011); S.C. CODE ANN. § 37-5-109 (2012).

8

significant impairment—more precisely, whether merely filing a bankruptcy petition is a significant impairment under the statute. If so, then *ipso facto* provisions are enforceable and an auto lender may repossess a vehicle even if the debtor is current on the payments. If not, repossession is impermissible if the debtor is current on payments and the only asserted grounds for significant impairment is the bankruptcy filing itself.

The Nevada Supreme Court has not interpreted "significant impairment" under NEV. REV. STAT. § 97.304, but other courts addressing this precise issue under UCCC § 5.109 (and its state corollaries) have all agreed that filing a bankruptcy petition is *not* a significant impairment. *In re Koufos*, 2010 WL 4638408 at *2 (Bankr. D. Mass. 2010); *In re Visnicky*, 401 B.R. 61, 66–67 (Bankr. D.R.I. 2009); *In re Schmidt*, 397 B.R. 481, 485 (Bankr. W.D. Mo. 2008); *In re Riggs*, 2006 WL 2990218 at *3 (Bankr. W.D. Mo. 2006); *In re Steinhaus*, 349 B.R. 694, 710–11 (Bankr. D. Idaho 2006); *In re Rowe*, 342 B.R. 341, 351 (Bankr. D. Kan. 2006); *Hall v. Ford Motor Credit Co. LLC*, 254 P.3d 526, 533, 292 Kan. 176, 185–86 (2011); *see In re Timmons*, 2012 WL 4435522 at *6 (Bankr. D. Kan. 2012).[10]

Creditors will have a difficult time establishing that a bankruptcy filing is a significant impairment because "the bankruptcy case usually results in the discharge of debts which the debtor would otherwise be obligated to service." *In re Riggs*, 2006 WL 2990218 at *3 (citing *In re Rowe*, 342 B.R. at 350). This court believes the Nevada Supreme Court would agree that the mere filing of a bankruptcy petition is not a significant impairment under NEV. REV. STAT. § 97.304, especially in light of debtors' expected increase in available funds post-discharge.

In light of the unenforceability of *ipso facto* clauses in auto sales contracts under NEV. REV. STAT. § 97.304, the next issue is whether approving a reaffirmation agreement that reaffirms an

---

[10] In an interesting contrast, Maine's version of UCCC § 5.109 adds a subsection specifying that "without limitation . . . commencement of any proceeding under any bankruptcy or insolvency laws by or against debtors" constitutes a significant impairment, strongly implying that the Maine legislature interpreted UCCC § 5.109 as drafted to not comprehend filing for bankruptcy as a significant impairment. ME. REV. STAT. tit. 9-A, § 5-109(3)(A) (2012).

9

auto purchase debt incurred after October 1, 2011 can be in a debtor's best interest under Section 524(c)(6)(A)(ii). The answer is no. Without reaffirmation, the unsecured portion of a claim would be discharged and the debtor could maintain possession and use of the vehicle so long as she keeps current on payments, or otherwise does not default in a way that "substantially impairs" a lender's collateral, such as by letting any required insurance lapse. An approved reaffirmation agreement would not improve the debtor's ability to possess or use the vehicle, nor would it alter the scope of events that constitute default. Yet, it would exclude the entire amount of the creditor's claim (the secured and unsecured portions) from discharge. In short, if approved, the debtor would face the same risk of repossession yet would also retain personal liability for the unsecured portion of the debt. Approving a reaffirmation agreement in this context is certainly not in a debtor's best interest. 11 U.S.C. § 524(c)(6)(A)(ii) (2012); *In re Carlos,* 215 B.R. at 62; *see In re Moustafi,* 371 B.R. at 438.

An objection exists that this result is contrary to Congress' efforts to eliminate "ride through" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), *In re Dumont,* 581 F.3d at 1109-10. Pre-BAPCPA, debtors could "ride-through," or "pay and drive," without entering into a reaffirmation agreement and still enjoy the protection of the automatic stay. *Id.*; *see McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668 (9th Cir. 1998). BAPCPA requires debtors to enter into a reaffirmation agreement or suffer the termination of the automatic stay as to the relevant property. 11 U.S.C. § 362(h) (2012).

After October 1, 2011, however, Nevada creditors can only repossess on a payment or other similar default (after moving for relief from stay or after entry of the discharge). Violation of an *ipso facto* clause is insufficient to justify repossession, as the debtor's status as one who filed for bankruptcy relief does not affect collection or substantially impair collateral. In these situations, there can be no deficiency judgment because the bankruptcy discharge includes the unsecured portion of the related claim. *See Americredit Fin. Servs. v. Penrod (In re Penrod),* 392 B.R. 835, 839–40 (B.A.P. 9th Cir. 2008), *aff'd,* 611 F.3d 1158 (9th Cir. 2010); *In re Anderson,* 348 B.R.

652, 661 (Bankr. D. Del. 2006).

One consequence of this change in law is that if the creditor legally repossesses the vehicle, the creditor's recovery is limited to the value of the vehicle at the time of repossession, just as was the case with "ride through." Justifying the approval of a reaffirmation agreement in this context would be quite difficult if not impossible. *See id.* at 1114 ("If ride-through existed, any lawyer who advised his client to make a reaffirmation offer on the original contract terms would be guilty of malpractice, and any bankruptcy judge who approved such a reaffirmation from a pro se litigant would be seriously derelict in his duties. For why would one ever choose reaffirmation on such terms and thus incur the risk of personal liability when one could safely achieve the same ends by ride-through?").

### B. Application of Law to Facts

In the five bankruptcy cases at issue, the debtors entered into reaffirmation agreements of the kind specified in Section 524(c), and thus their vehicles remain in their respective bankruptcy estates and enjoy the protection of the automatic stay, at least until they receive their discharges. 11 U.S.C. § 362(h) (2012); *In re Moustafi*, 371 B.R. at 439. The remaining issue is whether the reaffirmation agreements should be approved under Section 524(c)(6)—a necessary inquiry because the debtors here all negotiated their reaffirmation agreements without the assistance of counsel. *Id.* § 524(c)(6).

The debtors all purchased their vehicles after October 1, 2011. NEV. REV. STAT. § 97.304 thus applies. Accordingly, any defaults due to *ipso facto* clauses in their purchase agreements cannot serve as a basis for repossession – the mere status of filing bankruptcy does not substantially impair the lenders' collection or collateral. NEV. REV. STAT. § 97.304 (2011); *In re Schmidt*, 397 B.R. at 485. Also, all debtors are current with their car payments and not otherwise in default under their purchase agreements.

Were the court to approve the reaffirmation agreements, each debtor would become personally liable for the unsecured portions of their respective lender's claim. If the court does not

11

approve, then each debtor would not become liable for any deficiency, as such claim would be discharged. Yet in either case, so long as they maintain their payments and do not endanger the collateral, they can maintain possession and use of their vehicles. In short, there is no upside for the debtors in the reaffirmation agreements. There is only the downside of excluding unsecured debt from discharge. Consequently, the reaffirmation agreements are not in the debtors' best interest.[11]  11 U.S.C. § 524(c)(6)(A)(ii); *In re Carlos,* 215 B.R. at 62.

## IV.  CONCLUSION

The court disapproves the five reaffirmation agreements at issue because they are not in the best interest of the debtors. The court will issue separate orders disapproving each reaffirmation agreement.

Copies to:
CM/ECF ELECTRONIC NOTICING
BNC MAILING MATRIX

###

---

[11]The court also notes that one of the debtors, Ms. Perez-Urrea, indicated on her proposed reaffirmation agreement that her net monthly income is *negative* $40 after deducting the monthly payment on the reaffirmed debt. This raises a presumption of undue hardship. 11 U.S.C. § 524(m)(1) (2012). In her papers and at the reaffirmation hearing, Ms. Perez-Urrea stated that she was in the process of reducing her expenses for dry cleaning and laundry. These reductions are insufficient to rebut the presumption, however. The court thus disapproves her reaffirmation agreement on the independent grounds that it imposes an undue hardship on her. *Id.* § 524(c)(6)(A)(i).